Case 4:21-cv-01621   Document 21   Filed on 03/25/22 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PETER SAUER, § § Plaintiff, § § VS. § CALGON CARBON CORP., *et al.*, § § Defendants. § | CIVIL ACTION NO. 4:21-CV-01621 |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Remand filed by Plaintiff Peter Sauer ("Sauer"). (Dkt. 14). After careful consideration of the pleadings, the motion and response, the entire record, and the applicable law, the motion is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

Sauer alleges that while on property owned by Defendant Calgon Carbon Corp. ("Calgon") in Ohio, he fell from a ladder and injured his neck, head, back and arm. (Dkt. 1-2). Sauer alleges that the fall was the result of the actions of a Calgon yard hand. *Id.* Following his injury, Sauer filed this action asserting claims for negligence and gross negligence against Defendants Calgon and Kuraray America, Inc. ("KAI") in Texas state court. *Id.*

Calgon and KAI removed the case to this Court. As the basis for removal, Calgon and KAI assert that the Court has diversity jurisdiction over this action. They argue that

complete diversity among the parties exists because, while KAI has its principal place of business in Texas and Sauer is a Texas resident, KAI was improperly joined to this action. (Dkt. 15 at 1). In support of this argument, they (1) point to specific factual allegations in the complaint that can be objectively verified as untrue and (2) provide affidavit and deposition testimony regarding the correct facts.

Sauer filed a motion to remand this case to state court. Sauer argues that KAI was properly joined to this action and thus there is no complete diversity among the parties and the Court lacks subject matter jurisdiction to hear this action. Sauer has attached public records from the internet and deposition testimony excerpts that he argues demonstrates the possibility of his recovery in this action against KAI for negligence. The Court considers the parties arguments below.

## LEGAL STANDARD

Generally, under 28 U.S.C. § 1441(a), a defendant may remove to federal court any state court civil action over which the federal court would have "original jurisdiction." *See Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). If jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events. 28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that

2 / 10

removal statutes should be strictly construed. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, No. 95-668, 1995 U.S. Dist. LEXIS 10227, 1995 WL 419901, at *4 (E.D. La. July 13, 1995).

Federal courts have "original jurisdiction" over civil actions where the parties are diverse and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). However, such diversity jurisdiction requires complete diversity—that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *See, e.g., Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016) ("The only caveat is that, when a properly joined defendant is a resident of the same state as the plaintiff, removal is improper."). Here, the parties do not dispute that the amount in-controversy-requirement is met, but they disagree about whether the complete diversity requirement is satisfied. Indeed, Sauer and KAI have Texas citizenship, which would ordinarily destroy complete diversity. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). And when a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332.

Improper joinder constitutes a narrow exception to the rule of complete diversity. *Cuevas v. BAC Home Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). Under this doctrine, the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity. *Id.* In essence, the court may ignore an improperly joined non-diverse defendant when determining its subject-matter jurisdiction.

*Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992, (2005).

The burden of demonstrating improper joinder is a heavy one and under this exception a non-diverse defendant may only be found to be "improperly joined" if either (1) there is "actual fraud in the [plaintiff's] pleading of jurisdictional facts" or (2) the removing defendant demonstrates that the plaintiff cannot establish a cause of action against the non-diverse defendant. *Smallwood*, 385 F.3d at 574; *Mumfrey v. CVS Pharm. Inc.*, 719 F.3d 392, 401 (5th Cir. 2013). Only the second type of improper joinder is at issue here. The Court must determine whether KAI and Calgon have demonstrated that there is no possibility of Sauer's recovery against KAI for negligence. Stated differently, this means that there is no reasonable basis for the Court to predict that Sauer might be able to recover against KAI for negligence. *See Smallwood*, 385 F.3d at 573; *see also Mastronardi v. Wells Fargo Bank, et al.*, No. 15–11028, 653 Fed. App'x. 356, 357, 2016 WL 3549007, at *1 (5th Cir. June 29, 2016) (citing *Smallwood*). In making this determination, the removal statute must be "strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281-82.

Federal pleading standards govern the Rule 12(b)(6)-type improper joinder analysis. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 204. To determine whether a plaintiff has a reasonable basis of recovery under state law, a court may "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* The scope of

the inquiry for improper joinder, however, is even broader than that for Rule 12(b)(6). This is because in cases where "a plaintiff has stated a claim but has misstated or omitted discrete facts that would determine the propriety of joinder," the district court may "pierce the pleadings" and conduct a summary judgment-type inquiry. *Smallwood*, 385 F.3d at 573; *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 389 n. 10. In conducting this inquiry, the Court must "take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. Further, the Court must take care not to "mov[e] beyond jurisdiction and into a resolution on the merits." *Smallwood II*, 385 F.3d at 574.

## ANALYSIS

The Court finds that to resolve the pending motion, a summary judgment type inquiry is needed because Sauer has misstated and omitted discrete facts that determine the propriety of the joinder of KAI to this action. The fact that both the motion to remand and notice of removal go beyond the allegations in the complaint and attach summary judgment type evidence to support their arguments underscores this conclusion.

Sauer has sued KAI for negligence under Texas law and an essential element of this claim is that KAI owed him a duty of care to him that was breached and caused his injury. *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). The complaint alleges that Sauer's injury was caused by a Calgon employee at a Calgon property in Ohio. To establish that KAI owed a duty to Sauer and is therefore liable for his injuries, Sauer pleads the following facts:

> Calgon Corporation is owned by Kuraray America…Kuraray is the parent company of Calgon Carbon. Through its Houston office, Kuraray direct control for its portfolio of companies. Further, it implements and improves the safety practices and policies that guide its companies – including Calgon Carbon. Moreover, some of the executives that direct the work and running of Calgon Carbon do so from the Kuraray offices in Houston, Texas. Accordingly, the deficiency of the safety policies and work practices, certainly as they pertain to this accident, were all developed, approved and implemented by Kuraray in Houston. Thus, these deficiencies that led to Plaintiff's injury is [sic] directly attributable to the business practices and actions of Kuraray. (Dkt. 1-2).

The Court finds that these factual statements are not true. Attached to the notice of removal are the affidavits of Chad Whalen, a Calgon corporate officer and Hajime Suzuki ("Suzuki"), a KAI corporate officer. (Dkt. 1-4) (Dkt. 1-5). These affidavits establish that KAI is *not* the parent company of Calgon, nor does it have "a portfolio of companies" including Calgon Carbon that it "directs control" over or for whom it guides, "implements and improves" their safety practices from Houston. KAI is merely a sister corporation of Calgon—both companies are subsidiaries of another company.[1] *Id.* The internet webpages attached to Sauer's motion to remand also verify that KAI is not the parent company of Calgon. (Dkt. 14-4 at 1-13).

Prior to filing the motion to remand, Sauer conducted discovery into the veracity of these affidavits and the internet webpages concerning the corporate structure of Calgon and KAI by taking the deposition of Suzuki. The discovery confirmed that the information provided by the attachments to the notice of removal and the internet webpages is true—KAI is not the parent company of Calgon and, as a sister company of Calgon, KAI has

---

[1] The parent company of both defendants is Kuraray Holdings Inc.

nothing to do with the safety operations or decision making at Calgon. Suzuki's deposition provides in pertinent part as follows:

> Q. Okay. Can you explain to me the relationship or – yeah, just the relationship between Kuraray America and the other defendant in this case, Carbon Calgon Corporation [sic]?
> A. For Kuraray America, Calgon Carbon is our sister company – our sister company.
> Q. And can you explain with what that means? What do you mean by sister company?
> THE WITNESS: The Kuraray America and Calgon Carbon are the 100 percent of Kuraray Holdings. As I mentioned in opposite way, the Kuraray Holdings is the 100 percent parent company of Kuraray America and Calgon Carbon. (Dkt. 15-1 at 6).
>
> ******
>
> Q. Do you know if any of the people on the board of directors for Kuraray America, Inc. are also on the board of directors for Carbon Calgon – Calgon Carbon, sorry I can't get those straight?
> A. There's no such a person.
> Q. Okay. And to your knowledge do – does anybody from – Calgon Carbon share an office with anybody from Kuraray America, Inc.?
> A. There's no such a person. (Dkt. 15-1 at 6).
>
> ******
>
> Q. What about officers are there any officers that are the same?
> A. There is no such person either. (Dkt. 15-1 at 9).
>
> ******
>
> Q. Okay. So if there's a problem with Carbon Calgon [sic], do they come to you guys or do they directly to Japan
> A. They report directly to Japan.
> Q. Okay. And as far as you know, Calgon Carbon has its own accounting department?
> A. Yes.
> Q. They have their own HR department?
> A. Calgon Carbon -- Calgon Carbon does have its own HR department.
> Q. They have their own IT department?
> A. Yes, Calgon Carbon has its own IT department.
> Q. And they have their own logistics department?

> A. Yes, they do.
> Q. Have you met the Board for Calgon Carbon?
> A. Yes, I have.
> Q. How often do you interact with the officers or board directors of the Calgon Carbon company?
> A. I rarely interact with them. (Dkt. 15-1 at 12-13).
>
> ******
>
> Q. Okay. So – and excuse me if you already went over this. I think I lost some stuff in the translation. But you were going over, kind of, how Kuraray Group disseminates, maybe some of these policies or procedures or what oversight they have over their affiliated companies or their subsidiaries. Can you explain that a little bit?
> A. I mean, each company is responsible for implementing and the operational safety regulations.
> Q. And where are they getting these operational safety regulations? Are you saying that's from Kuraray Company Limited?
> A. So each company establish the procedures and then operate the business and following that policy and the regulations. (Dkt. 14-6 at 3).

Finally, the complaint makes no factual allegations supporting a reason for the Court to disregard the corporate form of either company to find one liable for the conduct of another. The motion to remand offers no evidence contradicting any of the discrete facts established by the affidavits, deposition testimony of Suzuki cited above and the internet webpages. Thus, there is no reasonable basis for the Court to predict that Sauer might be able to recover against KAI for the negligence claim asserted in this action.

Sauer's motion to remand glosses over the complaint's inaccurate statements about KAI, stating in conclusory fashion that "Plaintiff in this case has not misstated or omitted any discrete facts in his Original Petition." (Dkt. 14 at 11). Sauer also dismisses Suzuki's testimony and the affidavits as "self-serving." Sauer argues that "as shown in section "5" of this Remand and through publicly available information and the testimony of [Suzuki],

Defendant KAI by all public available information, does undertake implementation of safety policies and procedures" for Calgon. The Court disagrees.

The mere fact that that Suzuki, a KAI officer, is also an officer in the holding company for U.S. subsidiary companies that include Calgon neither supports this conclusion nor provides a reasonable basis for the Court to predict that Sauer might be able to recover against KAI for negligence in this action. (Dkt. 14 at 12). Furthermore, evidence that Suzuki (1) was present as a guest at Calgon's headquarters for the celebration ceremony of Calgon's acquisition by the holding company and (2) served one time as a translator/interpreter for a visit to Calgon's headquarters by the president of the holding company does not provide a reasonable basis for the Court to predict that Sauer might be able to recover against KAI for negligence in this action. *Id.* There is no piece of evidence that Sauer has submitted to the Court even suggesting that Suzuki ever undertook the "implementation of safety policies and procedures" for Calgon. The Court agrees with KAI's and Calgon's assertion that removal was proper because "KAI has absolutely *zero* involvement with the alleged accident and KAI did not direct or control [Calgon's] business or [Calgon's] implementation of [Calgon's] safety policies and procedures." (emphasis in original) (Dkt. 15-1).

## CONCLUSION

Accordingly, the Court finds that KAI was improperly joined to this action and will disregard its citizenship in determining its jurisdiction. Since there is complete diversity in this case between Sauer, a Texas resident, and Calgon, a foreign corporation, and the

amount in controversy in this case exceeds $75,000 the Court finds that it has subject matter jurisdiction over this action. For the reasons stated above, the Court finds that removal was proper and Sauer's Motion to Remand (Dkt. 14) is **DENIED**.

SIGNED at Houston, Texas on the 25th of March, 2022.

_____
GEORGE C. HANKS, JR.

UNITED STATES DISTRICT JUDGE